**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 28 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JEFFREY R. HILL,                               )
                                               )
    Appellant-Defendant,                       )
                                               )
        vs.                                )       No. 20A03-1404-CR-132
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Plaintiff.                        )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1311-FA-063

**October 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Jeffrey Hill and his son plotted for a week to burglarize the home of an elderly couple. At the time, Hill had seven felony burglary convictions and was on parole for burglary. Hill and his son broke through the locked front door and encountered the homeowner inside. Hill's son beat the homeowner with a tire iron, breaking two vertebrae in his neck and fracturing his skull. Hill then forced the wife to look for valuables. Hill and his son took guns, a television, and money. The homeowner was hospitalized for several days.

Hill eventually pled guilty to Class A felony robbery, Class A felony burglary, Class B felony conspiracy to commit burglary, and Class B felony criminal confinement, and the trial court sentenced him to 120 years. Hill argues on appeal that the trial court abused its discretion in identifying some of the sixteen aggravators and that his sentence is inappropriate. Concluding that the trial court would have imposed the same sentence without regard to the challenged aggravators and that Hill has failed to persuade us that his sentence is inappropriate in light of the deplorable nature of the offenses and his unrelenting criminal character, we affirm.

**Facts and Procedural History[1]**

While on parole for felony burglary, forty-three-year-old Hill decided to "hit a lick" with his twenty-six-year-old son, Jeffery Hunt. Appellant's App. p. 67. Hill targeted the New Paris, Indiana, home of eighty-two-year-old Donald and seventy-eight-year-old

---

[1] The factual basis for the offenses is extremely limited. But because both parties use facts from the Presentence Investigation Report, we do too.

Beverly Neer, because Hill drove by their house every day on his way to work. The father-son duo plotted the burglary for a week.

Then, on November 4, 2013, Hill drank beer and liquor, took two unprescribed anxiety pills, and borrowed his wife's minivan. Hill and Hunt then drove to the Neers' house and forced their way through the locked front door. When they encountered Donald inside, Hunt beat him with a tire iron, breaking two vertebrae in his neck and fracturing his skull. Beverly rushed into the room and saw Hunt beating her husband with the tire iron. Hill then forced Beverly into her bedroom to search for valuables. Beverly was pushed down at some point and injured her hip. Hill and Hunt took a shotgun, two muzzleloaders, a 55-inch television, a DVD/VCR, and $200 in cash. Hill and Hunt left, and Beverly called 911.

Donald was hospitalized four days in Goshen General Hospital. He had to wear a neck brace twenty-four hours a day for three months. Donald's hospital bills alone topped $20,000.

Beverly identified Hill in a photo lineup. The State charged Hill with Count I: Class A felony robbery (serious bodily injury to Donald), Count II: Class A felony burglary (bodily injury to Beverly), Count III: Class B felony conspiracy to commit burglary, and Count IV: Class B felony criminal confinement (Donald). Hill and the State entered into a plea agreement. Pursuant to the agreement, Hill pled guilty to Counts I-IV, and the State and defense were "free to argue appropriate sentence within the full range of penalties. All terms and conditions at the discretion of the Court." *Id.* at 17-18. In addition, the State agreed not to file any enhancements or any additional charges. Tr. p. 4-5.

3

At the sentencing hearing, the State presented evidence of Hill's extensive criminal history, which consists of eleven felonies—seven burglaries and one robbery.[2] Sent. Tr. p. 45; Appellant's App. p. 63-66. For the eleven felonies, Hill was sentenced to thirty-eight years of imprisonment. Sent. Tr. p. 45. Beverly and other family members testified about the devastating effect that the crimes have had on Beverly and Donald. Finally, Hill testified that he was "sorry" "from the bottom of [his] heart" and that he "never intended for nobody [sic] to get hurt." *Id.* at 39, 41. Hill admitted that he was "wrong" and that he was "going to pay for it." *Id.* at 41.

The trial court identified the following mitigators: all statements of Hill's counsel; Hill's heartfelt in-court apology; and Hill's acceptance of responsibility for the crimes. The court then identified numerous aggravators:

> (1) Hill's criminal history, which consists of eleven felonies—seven burglaries and one robbery. The trial court found this "significant in light of the fact that this case is a robbery and a burglary . . . . I think that indicates an unwillingness on your part to conform your conduct to the requirements of law." *Id.* at 47.

> (2) Hill committed these offenses while on parole for felony burglary.

> (3) Hill planned the crimes for a week.

> (4) The victims suffered serious bodily injury, specifically Donald's broken vertebrae and skull fracture and Beverly's hip injury. The trial court acknowledged that serious bodily injury was an element of robbery and therefore the injuries could not be used to enhance the robbery conviction; however, they could be used to enhance the other offenses. The court pointed out that Hill was "lucky" that "we're not here dealing with a murder." *Id.* at 49.

> (5) Hill involved his son, which the court found "troubl[ing]" and spoke to his character. *Id.*

---

[2] The trial court stated that Hill had five burglary convictions; however, according to the PSI, Hill actually has seven burglary convictions. Therefore, we will use that number.

(6) Hill committed the offenses while under the influence of alcohol and someone else's anxiety pills, in violation of the Controlled Substances Act.

(7) Hill's PSI shows that he used marijuana when he was eighteen years old.

(8) Hill's IRAS score shows that he is at high risk to offend, which the court said "would be hard to argue with" in light of his criminal history. *Id.* at 50.

(9) Other sanctions have been attempted but have proven to be ineffective. The trial court listed the other sanctions as: short-term jail or incarceration, probation, restitution, suspended sentences, concurrent sentences, and parole.

(10) A longer term of incarceration is needed because "38 years of incarceration on a person who's 43 years of age . . . [is] not working." *Id.* at 50.

(11) The victims were eighty-two and seventy-eight years old and Hill was forty-three years old, an age difference which the court found "significant." *Id.* at 51.

(12) Given Hill's experience with the criminal-justice system and his age, he should have known better.

(13) In the PSI, Hill attempted to shift some of the blame onto his wife by explaining that the motivation for the crimes was his wife's bills.

(14) There were multiple victims.

(15) Hill left with the goods, but he left Donald languishing and did not seek medical care for him.

(16) Less than an enhanced sentence would depreciate the seriousness of the offenses.

The trial court found that the aggravators "clearly, clearly warrant[ed] an enhanced sentence." *Id.* at 52. The trial court then sentenced Hill to maximum sentences for each count: fifty years for robbery, fifty years for burglary, twenty years for conspiracy to commit burglary, and twenty years for criminal confinement. The court found that any one

5

of the aggravators, when weighed against all of the mitigators taken as a whole, warranted the imposition of the full enhancements. *Id.* at 52, 53. With respect to consecutive sentencing, the trial court noted that only one aggravator was required to run the sentences consecutively. *Id.* at 53-54. The court then reweighed the aggravators and mitigators and found that it was "abundantly clear . . . on this record, and in particular due to the fact that [Hill had] 11 prior felony convictions, that at some point in time someone has to say enough is enough, and I guess I am that person in this case." *Id.* at 54. The court then ordered Counts I, II, and IV to run consecutively but Count III to run concurrently, for an aggregate sentence of 120 years.[3] The court also ordered Hill to pay restitution to the victims in the amount of $32,014.07 and $6070. Appellant's App. p. 43.

Hill now appeals.

## Discussion and Decision

Hill argues that the trial court abused its discretion in identifying some of the sixteen aggravators and that his 120-year sentence is inappropriate in light of the nature of the offenses and his character.

## I. Abuse of Discretion

Hill contends that the trial court abused its discretion in identifying some of the sixteen aggravators.

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

---

[3] The same trial-court judge also sentenced Hill's son Hunt to 120 years on August 5, 2014. *See State v. Hunt*, Cause No. 20C01-1311-FA-64 (Elkhart Cir. Ct.). Hunt's appeal is currently pending in this Court. *See Hunt v. State*, 20A03-1408-CR-300 (Ind. Ct. App.).

So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to properly weigh such factors. *Id.* at 491. If a trial court abuses its discretion, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

Hill argues that the trial court improperly identified the following aggravators: (1) the fact that the offenses were planned for a week because conspiracy already requires an agreement; (2) the victims suffered serious bodily injury, because serious bodily injury is an element of some of the offenses; (3) Hill involved his son in the crimes while at the same time finding that Hill was old enough to know better, because the two are inconsistent; (4) Hill put some of the blame on his wife's bills, which is inconsistent with the mitigator that he accepted responsibility for the crimes; and (5) Hill used marijuana

7

when he was eighteen years old, which was a long time ago. But even assuming that the trial court abused its discretion in identifying these aggravators, Hill is not entitled to remand for resentencing. *See McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007). This is so because Hill does not challenge the numerous remaining aggravators. *See id.* And in imposing sentence, the trial court explained that any one of the aggravators, when weighed against all of the mitigators taken as a whole, warranted the imposition of the full enhancements. Sent. Tr. p. 52, 53. Moreover, the court noted that only one aggravator was required to run the sentences consecutively. *Id.* at 53-54. The court then highlighted Hill's criminal history. In essence, the record is clear that the trial court would have imposed the same sentence without regard to the challenged aggravators. *McDonald*, 868 N.E.2d at 1114. We therefore review Hill's sentence under Indiana Appellate Rule 7(B).

## II. Inappropriate Sentence

Hill contends that his 120-year sentence is inappropriate in light of the nature of the offenses and his character. Article 7, § 4 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014). Indiana Appellate Rule 7(B) provides that an appellate court may revise a sentence if it finds, "after due consideration of the trial court's decision," that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." "This formulation place[s] the central focus upon the role of the trial judge, while at the same time reserving for the appellate courts the chance to review sentencing decisions in a climate more distant from local clamor." *Rice*, 6 N.E.3d at 946-47 (quotation omitted). The principal role of this review is to attempt to leaven the outliers.

*Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his sentence has met this inappropriateness standard of review. *Rice*, 6 N.E.3d at 946.

The nature of the offenses is deplorable. Already convicted of seven felony burglaries and while on parole for burglary, Hill plotted for a week to burglarize the Neers' house alongside his twenty-six-year-old son, Hunt. Hill consumed alcohol and took unprescribed anxiety pills and then drove to the Neers' home. The father-son duo broke open the Neers' locked front door. When they encountered eighty-two-year-old Donald inside, Hunt beat him with a tire iron, breaking two vertebrae in his neck and fracturing his skull. Seventy-eight-year-old Beverly rushed into the room and saw Hunt beating her husband with the tire iron. At the sentencing hearing, Beverly testified that she and Donald pled for Hill and Hunt to take whatever they wanted but to stop beating Donald; however, Hunt did not stop. Sent. Tr. p. 11-13. Hill then forced Beverly into her bedroom to search for valuables. Donald spent four days in the hospital and had to wear a neck brace around the clock for three months. Donald was not able to work, as he normally did. As Hill conceded at the sentencing hearing, the Neers "didn't have to get hurt." *Id.* at 44. Donald and Beverly no longer feel sale in their home and have to spend the "final years of [their] life . . . in fear . . . ." Appellant's App. p. 82.

The offenses in this case conform to Hill's character. In the words of Hill's own trial counsel, there is no "sugarcoat[ing]" his criminal record, which consists of "pages of priors." Sent. Tr. p. 6, 7. Hill has eleven prior felony convictions in Illinois and Indiana. Seven of his prior convictions are for burglary and one is for robbery. Burglary and robbery

are two of the convictions in this case. Hill also has felony convictions for theft and auto theft. In addition, Hill has numerous arrests that did not result in convictions, such as an arrest for attempted murder that was not prosecuted because the victim failed to cooperate. *Id.* at 64. Hill has also violated probation and parole. He was on parole for burglary in St. Joseph County when he committed the offenses in this case.

In sum, Hill has received thirty-eight years of sentences for all of his convictions, yet each time he has returned to a life of crime—this time with his own son, while on parole, and inflicting serious bodily injury upon an elderly couple. Although Hill apologized for his actions and accepted responsibility by pleading guilty, his escalating pattern of committing crime overrides any after-the-fact apology. As the trial court explained at sentencing, Hill has spent his life "skirt[ing] [his] way around" the rules and has "failed the system" that has tried to help him. *Id.* at 46. Accordingly, we agree with the trial court that the nature of these offenses and his unrelenting criminal character has finally reached the point when "enough is enough." *Id.* at 54. Hill has therefore failed to persuade us that his 120-year sentence is inappropriate. We therefore affirm the trial court.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

10