## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 28 2015, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Phyllis Emerick
Kara Krothe
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kenneth E. Biggins
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott Hedrick-Dwyer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 28, 2015

Court of Appeals Cause No.
53A05-1405-CR-201

Appeal from the Monroe Circuit Court.
The Honorable Mary Ellen Diekhoff, Judge.
Cause No. 53C05-1304-FC-383

**Darden, Senior Judge**

## Statement of the Case

[1] Scott Hedrick-Dwyer appeals his convictions by jury of criminal confinement as

a Class C felony[1] and battery as a Class A misdemeanor[2] as well as his adjudication as an habitual offender.[3] Hedrick-Dwyer also appeals his eighteen-year sentence. We affirm.

## Issues

Hedrick-Dwyer raises two issues for our review:

I. Whether the identity evidence was sufficient to support his convictions; and

II. Whether his eighteen-year executed sentence is inappropriate.

## Facts and Procedural History

On April 7, 2013, Amanda Gilles decided to go roller blading on the B-Line trail in Bloomington. While she was putting on her roller blades, Gilles noticed Hedrick-Dwyer and immediately felt uncomfortable because of the way he stared at her as he walked along the trail. When Gilles started on the trail, Hedrick-Dwyer was approximately twenty-five feet in front of her. He turned around and looked at Gilles three times as she approached and then passed him on her roller blades. Gilles noticed that Hedrick-Dwyer was wearing a gray

---

[1] Ind. Code § 35-42-3-3 (2006).

[2] Ind. Code § 35-42-2-2 (2006).

[3] Ind. Code § 35-50-2-8 (2005).

sweatshirt and gray sweatpants. He wore nothing on his head. When Gilles got to the end of the trail, she turned around to go back to her car. She had not gone very far when she saw Hedrick-Dwyer again. As soon as they made eye contact, Hedrick-Dwyer tackled Gilles. He straddled her while she was flat on her back, and he pinned her down so she could not move. Hedrick-Dwyer punched Gilles several times on the left side of her head and told her to give him what he wanted. As Hedrick-Dwyer reached for Gilles' shorts, a woman approached and Hedrick-Dwyer ran. The woman telephoned the police, who arrived at the scene and took photographs of Gilles' injuries.

[6] A few days later, Gilles spoke to a detective from the Bloomington Police Department and met with a police artist to create a composite sketch of her attacker. Gilles described him as a white male with very short stubbly hair. The police published the composite with a physical description of the suspect, including his clothing, in the local newspaper. Hedrick-Dwyer's father saw the composite and contacted the police because he believed his son, whom he had seen wearing a gray sweatshirt and gray sweatpants the day of the attack, was Gilles' attacker. Gilles reviewed a photo array and identified a photograph of Hedrick-Dwyer based on his facial structure, eyebrows, and hair. Gilles explained that she was ninety-seven percent certain Hedrick-Dwyer was her attacker because "there's always a little bit of uncertainty in life." Tr. p. 75. She later positively identified Hedrick-Dwyer in court.

[7] A jury convicted Hedrick-Dwyer of criminal confinement as Class C felony and battery as a Class A misdemeanor. Hedrick-Dwyer admitted his status as an

habitual offender. Evidence at the sentencing hearing revealed that Hedrick-Dwyer has an extensive criminal history that includes misdemeanor convictions for conversion and two counts of resisting law enforcement as well as felony convictions for theft, auto theft, and battery resulting in bodily injury where the victim was a police officer. In addition Hedrick-Dwyer has several failed attempts at successful completion of probation and was just released from the Department of Correction a few days before he attacked Gilles. The trial court sentenced Hedrick-Dwyer to eight years for the criminal confinement conviction enhanced by ten years due to his habitual offender status and one year for the battery conviction. The trial court ordered the eighteen-year sentence to run concurrently with the one-year sentence for an executed sentence of eighteen years. Hedrick-Dwyer appeals his convictions and sentence.

# Discussion and Decision

## I.      Sufficiency of the Evidence

[8]     Hedrick-Dwyer first argues that there is insufficient evidence to support his convictions. Specifically, he contends that the "only evidence that [he] committed the confinement and battery offenses against [Gilles] is the uncertain eyewitness testimony of the victim." Appellant's Br. p. 6. In reviewing the sufficiency of the evidence, this Court will affirm the convictions if the probative evidence and reasonable inferences to be drawn therefrom could allow a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). On appeal, we do

not reweigh the evidence or judge the credibility of witnesses. *Fields v. State*, 679 N.E.2d 898, 900 (Ind. 1997). Rather, we look only to the evidence and reasonable inferences supporting the judgment to determine whether the trier of fact could reasonably reach the conclusion. *Id.* If there is substantial evidence of probative value supporting a conviction, this Court will not set the judgment aside. *Id.*

[9] This Court has previously noted that "there is longstanding precedent from our supreme court holding that where a defendant's conviction is based upon his or her identification as the perpetrator by a sole eyewitness, such identification is sufficient to sustain the conviction if the identification was unequivocal." *Gorman v. State*, 968 N.E.2d 845, 848 (Ind. Ct. App. 2012), *trans. denied.* Here, Gilles' in-court identification of Hedrick-Dwyer was unequivocal and provides sufficient evidence to support his criminal confinement and battery convictions.

[10] We further note that even if Gilles had not unequivocally identified Hedrick-Dwyer in court, our review of the evidence reveals that Gilles was uncomfortable the first time she noticed Hedrick-Dwyer because of the way he stared at her when he walked along the trail. When Gilles started on the trail, Hedrick-Dwyer turned around and looked at her three times as she approached and passed him on her roller blades. When Gilles and Hedrick-Dwyer later made eye contact, he tackled her, straddled her while she was flat on her back, pinned her down so she could not move, and punched her head several times. The attack happened in broad daylight, and Hedrick-Dwyer wore nothing to cover his head or face. Gilles had ample opportunity to view Hedrick-Dwyer at

the time of the attack. This is evidence of probative value from which the jury could have found that Hedrick-Dwyer committed the offenses. Hedrick-Dwyer's argument is nothing more than an invitation for us to reweigh the evidence, which we do not do. *See Fields*, 679 N.E.2d at 900.

## II. Inappropriate Sentence

[11] Hedrick-Dwyer next argues that his sentence is inappropriate. Article VII, section 4 of the Indiana Constitution authorizes independent appellate review of sentences. *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014). This review is implemented through Indiana Appellate Rule 7(B), which states that we may revise a sentence, even if authorized by statute, if after due consideration of the trial court's decision, the sentence is inappropriate in light of the nature of the offense and the character of the offender. In determining whether a sentence is inappropriate, this Court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Hedrick-Dwyer bears the burden on appeal of persuading us that his sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[12] As to the nature of the offense, Hedrick-Dwyer attacked without provocation a young woman who was roller blading on a designated city trail in broad daylight. He tackled her, straddled her while she was flat on her back, and pinned her down so she could not move. He then punched her several times on the side of the head and told her to give him what he wanted. As to the character of the offender, we note that the significance of a criminal history in

assessing a defendant's character is based on the gravity, nature and number of prior offenses in relation to the current offense. *Moss v. State*, 13 N.E.3d 440, 447 (Ind. Ct. App. 2014), *trans. denied*. Here, Hedrick-Dwyer has an extensive criminal history that includes three misdemeanor and three felony convictions. He has several failed attempts at probation and was released from the Department of Correction just a few days before he attacked Gilles. Clearly, Hedrick-Dwyer has not reformed his criminal behavior despite his numerous contacts with the criminal justice system. Considering the nature of the offense and Hedrick-Dwyer's character, Hedrick-Dwyer has not met his burden of proving that his sentence is inappropriate.

[13] Affirmed.

[14] Friedlander, J., and Robb, J., concur.